**IN THE UNITED STATE DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERIC HAYES, | : | |
|     Petitioner | : | No. 1:05-cr-00443-09 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Respondent | : | |

**MEMORANDUM**

Before the Court is Petitioner Eric Hayes' motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. No. 2048), as well as Petitioner's first supplemental filing (Doc. No. 2051), second supplemental filing (Doc. No. 2089), and motion to amend or correct his initial filing (Doc. No. 2139). For the reasons that follow, the Court will deny Petitioner's motion to vacate, set aside, or correct his sentence, and deny as time-barred Petitioner's supplemental filings.

## I. BACKGROUND

In October 2007, a jury convicted Petitioner of conspiracy to commit the following criminal offenses: (1) interstate and foreign travel or transportation in aid of racketeering enterprises and transportation of an individual in interstate commerce with the intent to engage in prostitution; (2) interstate travel or transportation in aid of racketeering enterprises; (3) coercion and enticement; and (4) one consolidated count of transportation of an individual in interstate commerce with the intent to engage in prostitution. (Doc. No. 1144.) The Court sentenced Petitioner to 420 months imprisonment. (Doc. No. 1678.) The United States Court of Appeals for the Third Circuit affirmed his conviction and sentence on June 29, 2011. (Doc. No. 1994.) On November 5, 2012, Petitioner moved the Court to vacate, set aside, or correct his sentence. (Doc. No. 2048.) On November 16, 2012, and February 11, 2013, he filed supplemental

memoranda in support of his Section 2255 petition.  (Doc. No. 2089.)  The United States filed a

response on April 22, 2013.  (Doc. No. 2122.)  Finally, on August 2, 2013, Petitioner filed a

motion to amend or correct his Section 2255 petition.  (Doc. No. 2139.)  The Court will address

each of Petitioner's and the United States' arguments in turn.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the

sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was

imposed in violation of the Constitution or laws of the United States, or that the court was

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum

authorized by law, or is otherwise subject to collateral attack."  Section 2255 does not afford a

remedy for all errors that may have been made at trial or during sentencing.  United States v.

Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178,

185 (1979)).  Rather, Section 2255 is implicated only when the alleged error raises "'a

fundamental defect which inherently results in a complete miscarriage of justice.'"  Addonizio,

442 U.S. at 185 (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  Under the

Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the

time his conviction becomes final to file a Section 2255 motion.  28 U.S.C. § 2244.

Further, Section 2255(b) advises that a prisoner may be entitled to a hearing on his

motion.  The decision to hold a hearing is wholly within the discretion of the district court.

Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  When the record affirmatively

indicates that a petitioner's claim for relief is without merit, the claim may be decided on the

record without a hearing.  See Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir.

1985).  If the record conclusively negates the factual predicates asserted in support of a Section

2255 motion, or, if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, the trial court may elect not to conduct an evidentiary hearing.  Nicholas, 759 F.2d at 1075.

## III.   DISCUSSION

### A.   Petitioner's original Section 2255 petition

Petitioner raises six arguments in support of his initial Section 2255 petition, including four claims of ineffective assistance of counsel and two claims regarding the Court's use of sentencing guidelines.  (Doc. No. 2048 at 4-10.)  First, Petitioner alleges that counsel was ineffective for advising Petitioner to consolidate his charges into a Superseding Indictment and for failing to object to his separate but concurrent sentences for Counts II and III on direct appeal.  (Id. at 4.)  Second, Petitioner claims that he received ineffective assistance during trial because counsel's failure to object to certain jury instructions and/or move for a new trial resulted in an ex post facto violation.  (Id. at 5.)  Third, Petitioner claims that counsel was ineffective for failing to call certain witnesses, thereby denying Petitioner the opportunity to cross-examine four witnesses in violation of the Confrontation Clause.  (Id. at 7.)  Fourth, Petitioner claims that counsel's failure to move for a mistrial upon learning of new, favorable evidence constituted ineffective assistance at the trial level, and appellate counsel's failure to raise the issue on appeal constituted ineffective assistance on appeal.  (Id. at 9.)  Fifth, Petitioner claims the Court committed procedural error in applying cross-references to the sentencing guidelines, thereby erroneously calculating his sentence.  (Id. at 9.)  Finally, Petitioner claims that the Court's use of the "forcible rape guideline" in his sentencing violated his Fifth Amendment right to due process.  (Id. at 10.)

### 1.   Ineffective assistance of counsel claims

To demonstrate that counsel was ineffective, a petitioner must meet the two-part test established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  The first prong requires a petitioner to "show that counsel's performance was deficient," by establishing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Id.  In evaluating counsel's conduct, the Court adopts a "strong presumption" that the attorney's performance was reasonable.  Id. at 687, 689.

The second prong of the Strickland test requires a petitioner to establish that "the deficient performance prejudiced the defense" by showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable."  Id.  In assessing whether Petitioner has stated a claim for ineffective assistance of counsel, "a court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced."  Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006) (citing Strickland, 466 U.S. at 668).

### a.    Counsel's alleged failure to object to Petitioner's concurrent sentences for Counts II and III

Petitioner was initially indicted on charges contained in separate indictments (see Doc. No. 20; No. 1:07-cr-00293, Doc. No. 1), but his charges were later consolidated in a superseding indictment.[1]  (See id.)  Petitioner first contends that trial counsel's advice to consolidate the charges against him in Indictment Two with those set forth in the Superseding Indictment prejudiced his defense.  (Doc. No. 2049 at 3.)  Specifically, Petitioner argues that two of the

---

[1] At issue here are Counts II and III of the Superseding Indictment.  When the Court consolidated Petitioner's indictments, Count Three of Indictment Two became "consolidated Count III."  (Doc. No. 1678 at 1.)  Count Two of Indictment One became "Count II" in the superseding account.  (Id.)  The Court sentenced Petitioner to sixty months imprisonment for Superseding Indictment Count II and 120 months imprisonment for consolidated Count III, to be served concurrently.  (Id.)

statutes under which he was charged–the Travel Act, 18 U.S.C. § 1952, and the Mann Act, 18

U.S.C. § 2421–intend to punish the same underlying act or offense.  (Id. at 4.)  Petitioner claims

that his conviction under both statutes resulted in multiple sentences for a single offense in

violation of the Double Jeopardy Clause.  (Id.)  He further argues that had appellate counsel

raised this issue on appeal, both Counts II and III of his conviction would have been dismissed.

(Id. at 5.)

Petitioner asserts the following prejudice as a result of consolidating the charges and

counsel's failure to appeal the issue: (1) having two convictions on his record rather than one for

a single offense could potentially delay his "eligibility for parole or result in an increased

sentence;" (2) the second conviction could potentially be used against him for impeachment

purposes; and (3) an additional criminal conviction increases social stigma against him.  (Doc.

No. 2049 at 4-5.)  Petitioner further alleges that his sentence for Count III violates his due

process rights under the Fifth Amendment.  (Id. at 5.)

In short, Petitioner sets forth a multiplicity argument.  See United States v. Tann, 577

F.3d 533, 537 (3d Cir. 2009).  (Doc. No. 2122 at 30.)  Multiple indictments may violate the

Double Jeopardy Clause when they yield multiple sentences for a single offense and cause

prejudice to a defendant.  Tann, 577 F.3d at 538.  However, if "each provision [of the statutory

code under which defendant is charged] requires proof of a fact which the others do not," there is

no multiplicity.  Blockburger v. United States, 284 U.S. 299, 304 (1932).  The test for whether

each statutory provision requires proof of different facts is one of statutory construction, but it

"is not controlling when the legislative intent is clear from the face of the statute or the

legislative history."  See Garrett v. United States, 471 U.S. 773, 779 (1985).  Thus, multiplicity

in violation of the Double Jeopardy Clause does not exist when Congress intends to supply

multiple punishments for a single offense.

Petitioner asserts that the charges in both Counts II and III of the Superseding Indictment

were intended to punish one distinct, underlying act.  (Doc. No. 2049 at 3.)  Count II alleged that

Petitioner:

> did travel, cause the travel and did aid and abet the travel in interstate
> commerce to promote, manage, establish, carry on and facilitate the
> promotion, management, establishment and carrying on of an unlawful
> activity, that is prostitution, and thereafter did perform, cause to be
> performed and attempt to perform acts to promote, manage, establish and
> carry on, and to facilitate the promotion, management, establishment and
> carrying on of said unlawful activity

 in violation of 18 U.S.C. § 1952.  (Doc. No. 20 at 39.)  Count III alleged that Petitioner

"knowingly transported and caused to be transported an individual, that is D.F., in

interstate commerce to and from Harrisburg, Pennsylvania to Washington, D.C. and

Toledo, Ohio with the intent that such person engage in prostitution," in violation of 18

U.S.C. § 2421.  (No. 1:07-cr-00293, Doc. No. 1 at 4.)

The Court finds that the Travel Act charge in Count II and the Mann Act charge in Count

III punish distinct offenses, and as such Petitioner did not face multiplicitous charges.  Count II

charged Petitioner, along with fifteen others, with the offense of organizing and maintaining a

prostitution ring across state lines in violation of the Travel Act.  (Doc. No. 20 at 39.)  In

addition to the element of travel across state lines, which it shares with the Mann Act charge in

Count III, Count II required the government to prove that Petitioner "promote[d], manage[d],

establish[ed], carr[ied] on and facilitate[d] the promotion, management, establishment and

carrying on of an unlawful activity" both before and after traveling across state lines.  (Id.)

Conviction under the Travel Act charge did not require the jury to find that Petitioner caused

other persons to travel across state lines for the purpose of prostitution.  Rather, it was sufficient

to find that Petitioner himself made such travel in order to further the prostitution ring, so long as his actions served to "promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity." (Id.)

Conviction under Count II also required the jury to find that Petitioner continued to commit acts in furtherance of the prostitution ring after crossing state lines. (Id.) In contrast, conviction under Count III did not require Petitioner to perform any acts intended to uphold or maintain the organization of the prostitution ring, but instead required proof that he transported D.F. across state lines. See 18 U.S.C. § 1952(a)(3); 18 U.S.C. § 2421. Indeed, Petitioner's conduct satisfied the Count III charge as soon as he transported D.F. across state lines with the intent to engage her in prostitution. (Id.) The Court finds that contrary to Petitioner's assertion, the two statutes on which the charges in Count II and III are based are not multiplicitous, because they do not intend to punish the same offense.[2] Therefore, the Court finds that Petitioner was not prejudiced by trial counsel's advice to accept the consolidated counts, or appellate counsel's failure to raise the issue on direct appeal. Accordingly, the Court finds that counsels'

---

[2] Petitioner argues that the Court should apply the standards set forth in Illinois v. Vitale, 447 U.S. 410 (1980) and Whalen v. United States, 445 U.S. 684 (1980) rather than Blockburger. Vitale and Whalen clarify that in performing a Double Jeopardy analysis, the Court must look to see if one of the statutes under which a petitioner is charged punishes a "lesser" offense, the elements of which are fully included in the other statute. Vitale, 447 U.S. at 419-20. Vitale and Whalen instruct that when a statutory violation can be established in a number of different ways (e.g., a felony murder charge can be fulfilled by a jury finding that a defendant committed one of several enumerated felonies), the Court must ensure that the precise application of one statute to a specific petitioner does not encapsulate a "lesser included offense" charged against petitioner under a second statute. See id.; Whalen, 445 U.S. at 692. Petitioner's invocation of Vitale and Whalen is not necessarily improper, but the Court notes that as explained above and as specified in Petitioner's indictments, neither statute in question here punishes a "lesser included offense" present in the other statute. (See Doc. No. 20 at 39; No. 1:07-cr-00293, Doc. No. 1 at 4.) In short, each statute required distinct elements of proof not present in the other for conviction. Accordingly, neither Vitale nor Whalen change the Court's analysis of Petitioner's Double Jeopardy claim.

conduct regarding the consolidated counts did not amount to ineffective assistance of counsel, and Petitioner's motion to vacate, set aside, or correct his sentence on this ground will be denied.[3]

> **b.**   **Counsel's failure to object to an indictment and jury instructions allegedly caused an <u>ex post facto</u> violation**

Petitioner next contends that counsel was ineffective for failing "to object to the indictment and jury instructions" which allegedly constituted an <u>ex post facto</u> violation and thereby denied Petitioner due process of law.  (Doc. No. 2049 at 5.)  Petitioner's indictment and jury instructions for his charge under the Mann Act (18 U.S.C. § 2421) contained a cross-reference to Section 2A3.1, which was added to the United States Sentencing Guidelines ("U.S.S.G.") as of November 1, 2004.  Petitioner argues that because the jury could have convicted him based solely on his conduct before November 1, 2004, the cross-reference to Section 2A3.1 amounted to an <u>ex post facto</u> violation.  (<u>Id.</u> at 6.)  Petitioner further argues that because the United States did not present evidence that he violated the Mann Act after November 1, 2004, a "fatal variance existed" between his conviction under the Mann Act and the United States' case at trial.  (<u>Id.</u> at 7.)

---

[3] Petitioner notes that his co-defendant Terrence Williams successfully raised the issue of consolidated charges creating a Double Jeopardy violation on appeal.  (Doc. No. 2049 at 5.) However, Williams' situation was distinguishable, because he was charged twice for the same act in separate counts.  <u>United States v. Williams</u>, 428 F.App'x 134, 143 (3d Cir. 2011).  In Williams' case, the duplicative counts were consolidated for the purpose of sentencing, but the Court nonetheless imposed separate concurrent sentences on Williams for each duplicative count, in violation of the Double Jeopardy Clause.  <u>Id.</u>  Petitioner's situation is distinguishable because he complains that two of the statues under which he was charged, convicted, and ultimately sentenced–the Travel Act and the Mann Act–intend to and do punish the same conduct, rather than that he has been sentenced twice for one single, underlying act.  (Doc. No. 2049 at 3.)  As detailed above, the charges Petitioner faced under the Travel Act and the Mann Act went to separate, distinct acts by Petitioner.

The Court will dismiss Petitioner's claim that counsel was ineffective for failing to object to an alleged ex post facto violation.  Petitioner previously raised this "ex post facto" argument on direct appeal to the United States Court of Appeals for the Third Circuit.  (See Doc. No. 2122-1 at 7-8.)  "Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings" under Section 2255.  United States v. Orejuela, 639 F.3d 1055, 1057 (3d Cir. 1981).  The Third Circuit considered and rejected Petitioner's "ex post facto" argument because it found "[t]he conduct for which [Petitioner] was convicted included acts occurring after November 1, 2004, the effective date of relevant amendments to the Guidelines."  (Doc. No. 2122-1 at 7.)  Thus, the Court finds that Petitioner's ex post facto claim was "fully explored before appropriate federal tribunals on direct attack," and will thus decline to reconsider the issue here.  Orejuela, 639 F.2d at 1057. Accordingly, the Court will deny Petitioner's motion to vacate, set aside, or correct his sentence on the grounds of an ex post facto violation.

> **c.**    **Counsel's alleged ineffectiveness for failing to object to constitutional violations and move for a new trial**

Petitioner next argues that his Sixth Amendment right to confront and cross-examine witnesses was violated by counsel's failure to: (1) object to an incriminating out-of-court statement by J.B., whom the United States did not call; (2) cross-examine a police officer who arrested Petitioner on assault charges in 2007; and (3) motion for a mistrial after the Court allowed witness D.F. to "interpret" a recorded telephone conversation at trial.  (Doc. No. 2048 at 7.)  Petitioner also argues that his Sixth Amendment rights were violated when counsel did not object to either the introduction of a knife Petitioner allegedly used to threaten witness A.P., or

to evidence of Petitioner's prior convictions for assault, terroristic threats, and unlawful restraints.  (Id.)

### i.      J.B.'s out-of-court statements

Petitioner argues that counsel's failure to object to the alleged hearsay that occurred when trial witness D.B. repeated an incriminating out-of-court statement made by J.B. constituted ineffective assistance of counsel.  (Doc. No. 2049 at 8.)  Petitioner contends that the admission of J.B.'s out-of-court statement violated his Sixth Amendment rights under the Confrontation Clause.  (Id.)  The United States argues that D.B.'s trial testimony repeating J.B.'s statement did not violate the Confrontation Clause because the statement was an admission by a co-conspirator, and thus qualified as a hearsay exception.  (Doc. No. 2122 at 37.)

Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  However, when a statement is offered against a defendant and "was made by the party's coconspirator during and in furtherance of the conspiracy," the statement constitutes an exception to the hearsay rule.  Fed. R. Evid. 801(d)(2)(E).  "[T]he co-conspirator exception to the hearsay rule is steeped in [United States Supreme Court] jurisprudence, and 'co-conspirators' statements, when made in the course and in furtherance of the conspiracy, have a long tradition of being outside the compass of the general hearsay exclusion."  Bourjaily v. United States, 483 U.S. 171, 183 (1987).  Accordingly, when a co-conspirator's out-of-court statement is admitted during trial, "there can be no separate Confrontation Clause challenge" to the statement.  Id.

The Court finds that counsel was not ineffective for failing to object to D.B.'s testimony regarding J.B.'s out-of-court statements.  D.B. testified that J.B. put her in touch with Petitioner

so that Petitioner could function as D.B.'s pimp.  (Doc. No. 1178 at 28-29.)  D.B. also testified

that J.B. told her that she [J.B.] had worked for Petitioner as a prostitute while a minor.  (Id. at

34.)  D.B.'s testimony relayed statements by J.B. that implicated J.B. in the criminal conspiracy

for which Petitioner was charged.  (See id. at 28-29, 34.)  Thus, the Court finds that J.B.'s out-

of-court statements qualifed as an exception to the hearsay rule as the statements of a co-

conspirator, and therefore did not violate Petitioner's rights under the Confrontation Clause.

Accordingly, the Court finds Petitioner failed to establish that counsel's conduct prejudiced him,

and thus the Court will deny his motion to vacate, set aside, or correct his sentence based on

counsel's alleged ineffectiveness.

      **ii.**      **The recorded telephone conversation**

Petitioner next argues that trial counsel's failure to motion for a mistrial after witness

D.F. "interpreted" statements from a recorded telephone call to which she was not a party

constituted ineffective assistance of counsel and violated his Sixth Amendment rights under the

Confrontation Clause.  (Doc. No. 2049 at 8.)  Specifically, Petitioner objects to D.F.'s testimony

interpreting the word "leaking" in the context of prostitution.  (See id.; Doc. No. 1178 at 102.)

Petitioner also argues that D.F.'s testimony identifying the voices on the recorded telephone call

as those of Petitioner and Franklin Robinson violated his Sixth Amendment right to confront

witnesses because the recorded voices belonged to persons not testifying.  (Doc. No. 2049 at 8;

Doc. No. 1178 at 98-102.)

The Third Circuit has held that the admission of conversations recorded by law

enforcement do not violate the Confrontation Clause.  United States v. Hendricks, 395 F.3d 173,

181 (3d Cir. 2005).  Specifically, the Third Circuit stated that the purpose of such recordings "is

to capture conversations that the participants believe are not being heard by the authorities and

will not be available for use in a prosecution." <u>Id.</u>  Thus, the Third Circuit held, such recorded

conversations are not "testimonial" in nature, and therefore do not implicate the Confrontation

Clause.[4]  <u>Id.</u>

The Court finds that the use of recorded telephone conversations between Petitioner and

his convicted co-conspirator did not violate Petitioner's rights under the Confrontation Clause.

Just as in <u>Hendricks</u>, the recordings were intended "to capture conversations that the participants

believe are not being heard by the authorities and will not be available for use in a prosecution."

395 F.3d at 181.  Accordingly, the Court will deny Petitioner's motion to vacate, set aside, or

correct his sentence on the grounds that the recorded telephone calls violated his Sixth

Amendment rights under the Confrontation Clause.

Petitioner next argues that counsel was ineffective for failing to move for a mistrial after

the Court allowed witness D.F. to identify voices on the recorded telephone call.  (Doc. No. 2049

at 7.)  The United States responds that D.F. was competent to identify the voices of the men she

identified, because she had known them for several years.  (<u>Id.</u> at 41.)  Further, it argues that

D.F.'s history and experience in prostitution rendered her competent to define its associated

slang.  (<u>Id.</u>)  In determining whether a voice identification bears sufficient indicia of reliability,

the Court may apply some or all of the <u>Neil</u> factors, which were initially fashioned to test the

reliability of eyewitness identifications.  <u>See</u> <u>Gov't of the Virgin Islands v. Sanes</u>, 57 F.3d 338,

_____

[4] The Supreme Court has held that admission of out-of-court statements that are
"testimonial" in nature violates the Confrontation Clause.  <u>Crawford v. Washington</u>, 541 U.S. 36
(2004).  In <u>Crawford</u>, the Supreme Court defined three types of testimonial statements: "ex parte
in-court testimony or its functional equivalent," "extrajudicial statements . . . contained in
formalized materials," and "statements that were made under circumstances which would lead an
objective witness reasonably to believe that the statement would be available for use at a later
trial."  <u>Id.</u> at 51-52.  The Third Circuit held that recorded telephone conversations fit none of
these "testimonial" categories.  <u>See</u> <u>Hendricks</u>, 395 F.3d at 181.

340 (3d Cir. 1995).  As applied to voice identification, the <u>Neil</u> factors are: (1) the witness'

opportunity to hear the individual; (2) the witness' degree of attention; (3) the accuracy of the

witness' prior description; (4) the witness' level of certainty at the time of the confrontation; and

(5) the length of time between the confrontation and the purported crime.  <u>See</u> <u>id.</u>; <u>Neil v.</u>

<u>Biggers</u>, 409 U.S. 188, 198-200 (1972).  In <u>Sanes</u>, the Third Circuit found the "indicia of

reliability" standard satisfied when a witness identified a defendant to whom she had spoken

twice for approximately ten minutes each time.  57 F.3d at 340-41.

 The Court finds that counsel's failure to move for a mistrial after D.F. identified the

recorded voices did not constitute ineffective assistance of counsel.  Based on her own

testimony, D.F. knew both Petitioner and Robinson well.  (<u>See</u> Doc. No. 1178 at 68, 117-19.)

She specifically testified that she had worked for Petitioner as a prostitute for a number of years,

and had worked for "Silk," aka Robinson, for approximately seven months.  (<u>See</u> <u>id.</u> at 68, 95,

117-19.)  D.F. testified that she knew the sound of both Petitioner's and Robinson's voices, and

could recognize them again.  (<u>Id.</u> at 95.)  Considering the <u>Neil</u> factors and the Third Circuit's

decision in <u>Sanes</u>, the Court finds that D.F.'s testimony bore the proper "indicia of reliability"

for voice identification.  The Court thus finds that Petitioner's counsel was not ineffective for

failing to move for a mistrial after the testimony was allowed, because Petitioner does not

establish that counsel's conduct fell below an objective standard of reasonableness.

Accordingly, the Court will deny Petitioner's motion to vacate, set aside, or correct his sentence

on the basis of D.F.'s voice identifications.

 Petitioner also argues that trial counsel was ineffective for failing to move for a mistrial

when witness D.F. interpreted the term "leaking" in the context of prostitution.  (Doc. No. 2049

at 8-9.)  The United States responds that D.F.'s history with Petitioner and Robinson, as well as

her years spent working as a prostitute, gave her "an easy familiarity with the slang expressions used in the prostitution trade to describe common events." (Doc. No. 2122 at 41.)

The Court finds that Petitioner's trial counsel was not ineffective for failing to move for a mistrial when witness D.F. defined the term "leaking" as used by Petitioner and Robinson on the recorded telephone call. "[L]ay witnesses may state their understanding of the use of another person's statements [when] rationally based on the perception of a witness and helpful either to an understanding of the testimony of the witness on the stand or to the determination of a fact in issue." United States v. LaBoy, 505 F. App'x 182, 186 (3d Cir. 2012) (citing Fed. R. Evid. 701). The Court finds that D.F.'s statements regarding "leaking" meet the Rule 701 standard. D.F. first defined the term "leaking," in answer to a question about its meaning posed by Assistant U.S. Attorney Zubrod. (See Doc. No. 1178 at 74.) Attorney Zubrod asked D.F., ". . .what do you mean by 'leaking'?" and D.F. replied, "That mean he ain't had no prostitutes at the time." (Id. at 74-75.) Thus, prior to "interpreting" the telephone call where she identified the voices of Petitioner and Robinson, D.F. established through her testimony that she knew what the term "leaking" meant in a prostitution context. (Id.) In "interpreting" the term "leaking" per the recorded conversation, D.F. merely repeated a definition she had offered earlier in her testimony. (See id. at 74-75, 102.) The Court therefore finds that trial counsel's conduct did not fall below an objective standard of reasonableness when he failed to move for a mistrial after D.F. "interpreted" the term "leaking" in her testimony. Accordingly, the Court will deny Petitioner's motion to vacate, set aside, or correct his sentence on the grounds of D.F.'s testimony.

### iii.    Authenticity of the knife

At trial, witness A.P. testified that Petitioner beat and threatened her with a knife, which led to Petitioner's arrest. (Doc. No. 1179 at 97-98.) During her testimony, A.P. identified a

knife presented by the United States as the one Petitioner used to threaten her.  (Id.)  Petitioner

now argues that trial counsel was ineffective because his failure to cross-examine the arresting

officer who recovered the knife from Petitioner violated the Confrontation Clause.  (Doc. No.

2048 at 7.)

The Court finds that counsel's failure to cross-examine the arresting officer on the

authenticity of the knife did not violate the Confrontation Clause.  The Sixth Amendment's

Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the

right . . . to be confronted with the witnesses against him."  Pointer v. Texas, 380 U.S. 400, 403

(1965).  Specifically, a defendant has the right to confront "those who bear testimony against

him."  Melendez-Diaz v. Massachussetts, 557 U.S. 305, 309 (2009) (internal citations omitted).

A.P.'s in-court identification of the knife as the one Petitioner used to threaten her did not

implicate the Confrontation Clause, because A.P. was testifying to her own experience, and not

that of the arresting officer.  (See Doc. No. 1179 at 97-98.)  Simply put, the arresting officer did

not "bear testimony against" Petitioner through out-of-court statements, and counsel's decision

not to call and question the officer did not violate Petitioner's rights under the Confrontation

Clause.  (Id.)  The Court thus finds Petitioner has not established that his counsel's performance

fell below an objectively reasonable standard by failing to call or question the arresting officer,

or that he was prejudiced by counsel's conduct.  Accordingly, the Court will deny Petitioner's

motion to vacate, set aside, or correct his sentence based on counsel's conduct regarding the use

of the knife at trial.

### iv.    Introduction of prior convictions

Petitioner next argues that trial counsel was ineffective for failing to object to the

introduction of Petitioner's prior convictions for assault, terroristic threats, and unlawful

restraint, and appellate counsel was ineffective for not raising these issues on direct appeal. (Doc. No. 2048 at 7; Doc. No. 2049 at 9.)  Specifically, Petitioner asserts that the introduction of evidence of his assault of A.P., as well as his post-assault behavior in communicating with her while incarcerated, prejudiced him by increasing the "risk of a verdict tainted by improper considerations" in violation of both Rule 404(b) of the Federal Rules of Evidence, and his due process right to a fair trial.  (Doc. No. 2049 at 9.)  The United States responds that it did not use this evidence as a "prior conviction" per Rule 404(b), but instead used it to prove an "ultimate issue" in the case, namely "the use of force and coercion by [Petitioner] to force women to continue to engage in prostitution, a critical issue in the prosecution of [Petitioner] and his co-conspirators."  (Doc. No. 2122 at 45.)  The United States thus argues that because such evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Petitioner's assault of A.P. and A.P.'s testimony regarding Petitioner's post-arrest conduct were relevant and admissible under Rule 401 of the Federal Rules of Evidence.  (Id. at 47); Fed. R. Evid. 401.

The Court finds that Petitioner has failed to establish ineffective assistance of trial or appellate counsel for failing to object to or directly appeal the introduction of evidence surrounding his arrest for assaulting A.P.  "Rule 404(b), which proscribes the admission of evidence of other crimes when offered to prove bad character, does not apply to evidence of uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense."  United States v. Bobb, 471 F.3d 491, 498 (3d Cir. 2006) (internal citations omitted).  The Superseding Indictment charged Petitioner with "knowingly persuad[ing], induc[ing], entic[ing] and coerc[ing] an individual to travel in interstate commerce . . . to engage in prostitution."  (Doc. No. 20 at 55 (emphasis added).)  It also charged that Petitioner

"recruit[ed], direct[ed], manage[d], overs[aw], <u>discipline[d]</u>, and live[d] off the earnings of prostitutes." (<u>Id.</u> at 2-3 (emphasis added).)  Thus, to prove its case against Petitioner, the United States had to establish the ways in which Petitioner persuaded, induced, enticed, coerced, recruited, directed, managed, oversaw, and disciplined the women and girls who allegedly worked as prostitutes for him.  (<u>See id.</u> at 2-3, 55.)  Evidence as to how Petitioner accomplished the elements charged in the indictment were highly relevant in Petitioner's criminal trial.

Further, Petitioner's trial counsel used the evidence in question – Petitioner's assault and post-assault behavior toward A.P. – to argue that Petitioner's violence against A.P. was personal in nature, and that the United States therefore could not meet its burden of showing that Petitioner coerced A.P. into prostitution.  (<u>See</u> Doc. No. 1180 at 22-29.)  Thus, neither defense counsel nor the United States treated the evidence of Petitioner's assault on A.P., or his post-assault behavior, as "prior conviction" evidence.  (<u>See id.</u>; Doc. No. 1179 at 98-102.)  Rather, both parties used this evidence to argue whether or not the United States had met its burden of proving that Petitioner coerced A.P. into working as a prostitute.  (<u>See id.</u>; Doc. No. 1179 at 98-102.)

The Court finds that the evidence of Petitioner's assault on A.P., who admitted to working as a prostitute for Petitioner, and Petitioner's conduct toward A.P. after his arrest for assault, constituted "acts . . . intrinsic to the proof of the charged offense," and thus did not violate Rule 404(b) of the Federal Rules of Evidence.  <u>Bobb</u>, 471 F.3d at 498.  Accordingly, the Court will deny Petitioner's motion to vacate, set aside, or correct his sentence on the grounds that trial and appellate counsel were ineffective for failing to challenge "prior conviction" evidence introduced at trial.

### d.    "Newly discovered evidence"

Petitioner argues that trial counsel was ineffective for failing to move for a mistrial upon discovery of new evidence favorable to Petitioner, and appellate counsel was ineffective for not raising the issue on direct appeal.  (Doc. No. 2048 at 8.)  Petitioner asserts that counsels' conduct constituted violations of his rights under the Fifth, Sixth, and Fourteenth Amendments.  (Id.)  Specifically, Petitioner asserts that witness J.B.'s testimony at Petitioner's sentencing hearing contradicted the trial testimony of witnesses J.R. and A.P., and that such contradictory testimony "would have undermine [sic] the confidence in the outcome of trial."  (Doc. No. 2049 at 11.)  Petitioner contends that the United States failed to turn over its evidence that J.B.'s testimony would contradict that of J.R. and A.P., thereby causing a Brady violation.[5]  (Id. at 11-12.)  The United States denies that it failed to turn over J.B.'s interview prior to trial, and also argues that Petitioner's assertion that J.B.'s testimony fully contradicted that of J.R. and A.P. is incorrect, because J.B.'s testimony largely corroborated that of the other witnesses.  (Doc. No. 2122.)

The Court finds that Petitioner's arguments lack merit.  First, the United States did not keep J.B.'s interview with police from defense counsel, and thus the interview was neither "new evidence," nor evidence of a Brady violation.  (See Doc. No. 2122-1 at 24.)  Further, despite Petitioner's assertion that J.B.'s police interview and testimony at his sentencing hearing contradicted the testimony of J.R. and A.P., the Court's review of the record indicates that this assertion is incorrect.  In her testimony at Petitioner's sentencing hearing, J.B. corroborated the testimony of A.P. and J.R. by admitting she witnessed Petitioner beating A.P., and conceding she was frightened that Petitioner might "put his hands" on her for lying to him.  (Doc. No. 1796 at 17, 32, 34.)  Although J.B.'s testimony specifically challenged A.P. and J.R.'s claim that

_____

[5] A Brady violation occurs when the prosecution withholds evidence favorable to the defendant from the defense, thereby violating defendant's due process rights.  See Brady v. Maryland, 373 U.S. 83 (1963).

Petitioner beat A.P. with a tire iron, J.B. also admitted she was not in the room when the violence allegedly occurred.  (Id. at 23.)  After hearing the testimony of J.R. and A.P. at trial and J.B. at the sentencing hearing, the Court found "overwhelming evidence that the defendant engaged in threats and extreme force to prevent the prostitutes from leaving him and continuing to engage in prostitution."  (Id. at 131.)  Thus, the record does not support Petitioner's contention that J.B.'s "statement was vital to [Petitioner's] defense" and "would have undermine [sic] the confidence in the outcome of trial."  (Doc. No. 2049 at 11.)  Accordingly, the Court will deny Petitioner's motion to vacate, set aside, or correct his sentence on the ground that J.B.'s testimony constituted "new evidence" requiring a new trial.

### 2.    Sentencing guidelines

Petitioner argues in grounds five and six that his sentence was improperly calculated because the Court erroneously applied cross-references and sentence enhancements per the Sentencing Guidelines.  (Doc. No. 2048 at 9-10.)  Specifically, Petitioner argues that the Court treated "prohibited sexual conduct," as synonymous with "promoting prostitution" in applying a cross-reference, when in fact the two crimes are distinct and Petitioner was only convicted of the latter.  (Id. at 14.)  Petitioner also argues that the Court erroneously treated the acts of Petitioner's co-defendants as Petitioner's own acts, resulting in an improper sentence enhancement.  (Id.)  The United States responds that the Third Circuit previously rejected these arguments on direct appeal when it found that the Court properly applied the guidelines and enhancement because Petitioner "severely beat minors and young women to establish dominance over them," "created an environment of fear that forced their victims to continue to prostitute," "targeted 'lost girls'" and "trained at least one other co-conspirator/pimp."  See United States v. Hayes, 434 F. App'x 94, 97 (3d Cir. 2011).  In Petitioner's reply brief, he does not challenge the

fact that he already raised the issue of his sentence calculation under the guidelines on direct appeal, but rather argues that appellate counsel was "ineffective for raising the wrong argument which was contrary to petitioner's request."  (Doc. No. 2135 at 14.)  However, Petitioner does not clarify which arguments were raised improperly, or precisely what he requested of appellate counsel.  (See id.)

Because Petitioner already challenged the calculation of his sentence under the guidelines, as well as the Court's adoption of cross-references, the Court will not reconsider these issues under his Section 2255 petition.  See Orejuela, 639 F.3d at 1057.  Accordingly, the Court will deny Petitioner's motion to vacate, set aside, or correct his sentence on the grounds of improper application of cross-references and sentencing guidelines.

### B.        Supplemental filings

On November 16, 2012, and February 11, 2013, Petitioner submitted supplemental documents in support of his Section 2255 petition.  (Doc. Nos. 2051, 2089.)  The United States filed its response on April 22, 2013.  (Doc. No. 2122.)  On August 2, 2013, Petitioner filed a motion to amend or correct his Section 2255 petition.  (Doc. No. 2139.)  Because Petitioner's third supplemental filing was filed after the United States' response, the United States' brief addresses only Petitioner's November 16, 2012, and February 11, 2013 filings.  (See Doc. No. 2122 at 52, 64.)  The United States argues that because Petitioner filed his supplemental documents after the one-year statutory period in which a petitioner may file a Section 2255 petition, his supplemental grounds for relief are time-barred.  (Doc. No. 2122 at 53.)  Alternatively, the United States addresses the merits of Petitioner's claims in his first two supplemental filings.  (See id. at 57-66.)

Under the AEDPA, a petitioner has one year from the time his conviction becomes final to file a petition for a writ of habeas corpus.  28 U.S.C. § 2244.  However, a petitioner may file an amended pleading after the one-year period if the new grounds raised "relate back" to the original Section 2255 petition in that they arise from a "common core of operative facts uniting the original and newly asserted claims."  Mayle v. Felix, 545 U.S. 644, 659 (2005) (internal citations omitted).  Claims filed after the one-year period which are "supported by facts that differ in both time and type from those the original pleading set forth," are time-barred.  Id. at 650.  Additionally, if some form of "state action" impedes a petitioner from filing claims within the one year statutory period, or if a supplemental petition involves a right newly recognized and made retroactive to collateral review by the United States Supreme Court, the Court may consider the supplemental arguments.  See 28 U.S.C. § 2244(d)(1)(B)-(C).

Petitioner's conviction became final on November 7, 2012.  See Hayes v. United States, 132 S.Ct. 565 (2011); (Doc. Nos. 2051, 2089, 2139.)  Thus, all of Petitioner's supplemental filings fell outside the one year statutory period proscribed by the AEDPA, and therefore Petitioner must meet Mayle's "relation back" requirements, establish that state action prevented him from timely filing, or show that the Supreme Court recognized a new right applicable to his case to avoid being time-barred.

Petitioner asks the Court to accept the untimely grounds in his first supplemental filing because the prison at which he was housed was on lockdown status, which prevented him from raising all of the claims in his first petition.  (Doc. No. 2051 at 1.)  The Court will construe Petitioner's claims regarding the prison lockdown as an argument that state action prohibited him from filing all of his claims within the one year period.  See 28 U.S.C. § 2244(d)(1)(B).  Petitioner's penal institution was on lockdown status from October 9, 2011 to October 13, 2011,

and again on October 31, 2012.  (Doc. No. 2051 at 6-7.)  The October 2011 lockdown occurred

over a year before Petitioner's Section 2255 statutory period expired, and thus the Court finds

that the October 2011 lockdown did not constitute "state action in violation of the Constitution

or laws of the United States" that would have prevented Petitioner from timely filing.  28 U.S.C.

§ 2244(d)(1)(B).

The Court also finds that the October 31, 2012 lockdown did not prevent Petitioner from

filing within his statutory period.  His initial Section 2255 deadline was November 7, 2012.  See

Hayes, 132 S.Ct. at 565.  Petitioner's original Section 2255 petition was dated October 30, 2012

– one day before the incident giving rise to the lockdown began.  (See Doc. No. 2048; Doc. No.

2051 at 7.)  Thus, the record indicates that Petitioner believed his Section 2255 petition to be

complete before the prison went into lockdown status.  (See Doc. No. 2048; Doc. No. 2051 at 7.)

Moreover, Petitioner filed a letter with the Court dated November 7, 2012, wherein he requested

a copy of his docket sheet, and did not mention the lockdown as prohibitive of his timely filing

all grounds for his Section 2255 petition.  (Doc. No. 2050.)

Further, assuming arguendo that Petitioner could not include all of his claims in his initial

petition due to the prison lockdown, a "lockdown and limited library access alone do not support

a finding that [Section 2244] must be equitably tolled."  Perry v. Vaughn, No. 02-839, 2003 WL

22391236, at *4 (E.D. Pa. Oct. 17, 2003) (internal citations omitted).  Instead, Petitioner must

additionally "show that these circumstances actually impeded his ability to file a timely motion."

Id. (internal citations omitted).  Petitioner made no such showing here, but rather only

conclusorily stated that the lockdown rendered him "unable to fully complete his arguments /

grounds for relief."  (Doc. No. 2051 at 1.)  Thus, the Court finds the record does not indicate that

"state action in violation of the Constitution or laws of the United States" prohibited Petitioner

from timely filing all claims in his initial Section 2255 petition.  Accordingly, Petitioner's supplemental filings will not be considered timely due to prohibitive state action.  Further, Petitioner's first supplemental filing does not argue that the Supreme Court recognized a new right entitling him to relief, and thus the Court finds the claims therein are not timely on this ground either.  (See Doc. No. 2051).  Finally, the Court will examine whether each ground in Petitioner's first supplemental filing meets the relation back requirements of Mayle in order to avoid being time-barred.

### 1.      Petitioner's first supplemental filing

In Petitioner's first supplemental filing, he asserts: (1) trial counsel was ineffective for failing to object to a sentencing recommendation in Petitioner's Presentence Report based on the Probation Officer's erroneous belief that A.P. and D.F. were minors when Petitioner prostituted them; (2) appellate counsel was ineffective for failing to "appeal en banc" to correct the Third Circuit's mistaken belief that A.P. and D.F. were minors; (3) appellate counsel was ineffective for not raising an equal protection argument on direct appeal to address the fact that Petitioner's sentence differed from that of his co-conspirators, and for failing to raise the issue that counsel did not warn him of the possibility of consecutive sentences; and (4) appellate counsel was ineffective for failing to object to the Third Circuit's failure to make its decision upon the trial record, as evidenced by its reference to A.P. and D.F. as minors.  (See id. at 1-3.)

### a.      Trial counsel's failure to object to the Presentence Report

Petitioner argues that trial counsel was ineffective for failing to object to alleged mistakes in his Presentence Report, which subsequently led to Petitioner receiving a longer sentence. (Doc. No. 2051 at 1-2.)  Specifically, Petitioner argues that U.S.S.G. § 2G3.1, applicable only when the offense involves minors, should not have been applied to Petitioner because D.F. and

A.P. were adults when Petitioner prostituted them.  (Id.)  Petitioner does not set forth any

arguments as to how this claim relates back to his original Section 2255 petition.

The Court finds that this claim does not relate back, because the facts asserted by

Petitioner to support this claim "differ in both time and type" from the claims asserted in the

original petition.  Mayle, 545 U.S. at 650.  Although Petitioner challenged his sentence under the

sentencing guidelines in his original petition (see Doc. No. 2049 at 12-20), there Petitioner's

argument for relief was grounded in allegations that the Court improperly: (1) applied a cross-

references at U.S.S.G. Section 2A3.1; (2) sentenced him under "forcible rape" guidelines when

"there was no evidence of aggravated sexual abuse of forcible rape"; and (3) "held him

responsible for the acts of other [sic] based solely upon an admission of conspiratorial guilt."

(Id. at 17-18.)  Petitioner's original challenge to his sentence calculation did not raise the issues

of the prostitution victims' ages, or cross-references applied because of the involvement of

minors.  (See id.)  Because Petitioner's challenge to the Court's use of the guidelines in his

supplemental filing requires support from facts that differ from those raised in his initial petition

(i.e., the supplement requires proof that the Court enhanced Petitioner's sentence on the

erroneous belief that the victims were minors; the original petition required proof of Petitioner's

treatment of the victims and an evaluation of his conduct compared to that of his co-

conspirators), the Court finds that Petitioner's first supplemental claim does not relate back to

Petitioner's original petition.  Accordingly, the Court finds that Petitioner's first supplemental

claim is time-barred.

**b.      Appellate counsel's failure to appeal the Third Circuit's mistaken belief that A.P. and D.F. were minors**

Petitioner next argues that appellate counsel was ineffective for failing to "file an enbanc

[sic]" in response to the Third Circuit's affirmation of Petitioner's conviction.  (Doc. No. 2051 at

2.)  Specifically, Petitioner argues that he told appellate counsel to appeal because the Third

Circuit "mistakenly interpreted that [A.P.] and [D.F.] were minors," and that the "trial records

reflect that both victims were adults when petitioner met them," but counsel failed to follow his

instruction.  (Id.)  Petitioner does not set forth any arguments as to how this claim relates back to

his original Section 2255 petition.

The Court again finds that Petitioner's supplemental argument does not relate back to his

original Section 2255 petition.  Just as in Petitioner's first supplemental claim, the crux of

Petitioner's second supplemental argument is that a court mistakenly considered A.P. and D.F. to

be minors when Petitioner prostituted them.  (See id. at 1-2.)  In essence, Petitioner's claim

hinges on an allegation that the Third Circuit relied on facts unsupported by the trial record, and

thus counsel was ineffective for failing to appeal.  Because Petitioner did not challenge the Third

Circuit's understanding of the trial record as erroneous in his initial petition, the Court finds that

Petitioner's second supplemental argument does not share a common core of operative fact with

any of Petitioner's original six claims for habeas relief, and thus fails to relate back under Mayle.

See 545 U.S. at 659.  Accordingly, the Court finds that Petitioner's second supplemental

argument is time-barred.

**c.      Appellate counsel's failure to raise Equal Protection or "consecutive
          sentencing" claims**

Petitioner argues that appellate counsel was ineffective for failing to raise an equal

protection claim on direct appeal.  (Id. at 2.)  Petitioner contends that an equal protection

violation occurred because he received a different sentence calculation according to the

guidelines than did some of his co-conspirators.  (Id. at 2-3.)  Petitioner also argues that appellate

counsel was ineffective for failing to "rais[e] the issues" that Petitioner was not warned that he

may receive sentences that would run consecutively.  (Id. at 3.)  Once again, Petitioner does not set forth any arguments as to how these claims relate back to his original Section 2255 petition.

The Court finds that Petitioner's "equal protection" argument does not relate back to his original petition.  To succeed on equal protection grounds, Petitioner would need to establish facts showing that he was similarly situated to his co-conspirators, but was subjected to differential treatment with no rational basis.  See, e.g., Phillips v. Cty. of Allegheny, 515 F.3d 224, 243-44 (3d Cir. 2008).  Thus, Petitioner's equal protection claim would be based on facts such as the similarity or difference between his conduct and that of his co-conspirators; the different statutes under which they were criminally charged; comparisons between the charges for which Petitioner and his co-conspirators were convicted; and their respective criminal histories.  None of Petitioner's original claims center on his conduct, charges, convictions, or criminal history versus those of his co-conspirators.  (See Doc. No. 2048.)  Accordingly, the Court finds that Petitioner's "equal protection" argument does not share a common core of operative facts with any claim set forth in his initial petition, and is thus time-barred by the AEDPA.

However, the Court finds that Petitioner's "consecutive sentencing" argument relates back under Mayle.  To succeed on his "consecutive sentencing" argument, Petitioner must offer evidence that his appellate or trial counsel provided him with faulty advice.  Petitioner's original petition argued that trial counsel was ineffective for advising him to consolidate charges against him into the Superseding Indictment.  (See Doc. No. 2049 at 3.)  Thus, both Petitioner's "consolidation" and "consecutive sentencing" arguments stem from a "common core of operative facts" relating to counsel's allegedly faulty advice.  The Court thus finds that Petitioner's "consecutive sentencing" argument relates back, and therefore is not time-barred.

Nonetheless, the Court finds that Petitioner is not entitled to relief on this ground. Petitioner's argument is comprised of only one sentence: "Attorney was also ineffective for not raising issues that petitioner did not have a warning for consecutive sentencing." (Doc. No. 2051 at 3.) The United States did not address this statement in its brief. (See Doc. No. 2122.) The Court finds that Petitioner has failed to state a claim for ineffective assistance of counsel, because his one-sentence argument regarding counsel's ineffectiveness does not explain the circumstances surrounding counsel's alleged failure to warn him of the possibility of consecutive sentences. Petitioner's claim therefore cannot meet the Strickland standard of establishing that counsel's conduct fell below an objective standard of reasonableness. See 466 U.S. at 668. Accordingly, the Court will deny Petitioner's motion to vacate, set aside, or correct his sentence on the grounds that counsel was ineffective for failing to warn him of the possibility of consecutive sentences.

**d.       Appellate counsel's failure "to file en banc"**

Petitioner's fourth supplemental ground for habeas relief appears to be a repetition of his second supplemental ground. (See Doc. No. 2051 at 2, 3.) Just as in his second supplemental argument, Petitioner argues that appellate counsel was ineffective for failing "to file an enbanc [sic]" regarding the Third Circuit's allegedly mistaken belief that A.P. and D.F. were minors when prostituted by Petitioner. (Id. at 3.) Petitioner again does not set forth any arguments as to how this claim relates back to his original Section 2255 petition.

For the same reasons outlined in Section III.B.1.b above, the Court finds that Petitioner's fourth supplemental argument fails to relate back to his initial petition. See Section III.B.1.b. Accordingly, the Court finds that Petitioner's argument that appellate counsel was ineffective for failing to file for an en banc hearing based on the Third Circuit's alleged mistaken belief that

A.P. and D.F. were minors does not relate back to any of Petitioner's original arguments, and is thus time-barred by the AEDPA.

### C.     Petitioner's second and third supplemental filings

On February 11, 2013, Petitioner filed a document titled "supplemental memorandum in support of Section 2255." (Doc. No. 2089.)  Petitioner's memorandum alleged that his Fifth and Sixth Amendment rights to due process of law were violated because his sentence was increased by facts not listed in his indictment or found by a jury.  (Doc. No. 2089 at 2.)  Additionally, Petitioner asked the Court to take judicial notice of the Supreme Court's grant of certiorari in Alleyne v. United States, 133 S.Ct. 420 (2012).  (Id.)  The Supreme Court decided Alleyne in June 2013, and held that "facts that increase mandatory minimum sentences must be submitted to the jury." Alleyne v. United States, 133 S.Ct. 2151, 2163 (2013).

After the Alleyne decision, Petitioner filed a third supplemental motion to amend his Section 2255 petition.  (Doc. No. 2139.)  Petitioner asserts that the supplement meets the Mayle "relation back" requirement because "[t]he common core of facts are related to Petitioner's ineffective assistance of counsel." (Id. at 2.)  Petitioner's amendment first argues that counsel was ineffective for failing to argue, per Apprendi v. New Jersey, 530 U.S. 466 (2000), that each element of the crimes for which he was sentenced were not found by the jury.  (Id.)  Petitioner also argues that under Alleyne, his sentence was improperly calculated because the Court applied a cross-reference at U.S.S.G. § 2G1.3(c)(3), which allows for a higher base offense level "[i]f the offense involved conduct described in 18 U.S.C. § 2241 or § 2242." U.S.S.G. § 2G1.3(c)(3); (Doc. No. 2139 at 5.)  The Court will consider Petitioner's second and third supplemental filings in conjunction with one another, because it appears Petitioner intended his third supplemental

28

filing to clarify the argument in his second supplement according to the Supreme Court's decision in Alleyne.  (See Doc. Nos. 2089, 2139.)

First, the Court finds that Petitioner's argument under Alleyne does not "relate back" to his original Section 2255 petition, because it relies on facts made relevant by Alleyne, which was decided approximately eight months after Petitioner filed his original petition.  See 133 S.Ct. at 2163.  The Court thus considers whether Petitioner's motion to supplement his Section 2255 petition meets the exception to the AEDPA's one-year statutory period for claims based on rights newly recognized by the Supreme Court.  See Dodd v. United States, 545 U.S. 353, 359 (2005).

However, the Court finds that Petitioner's Alleyne argument fails.  In order to successfully state a claim based on a right newly recognized by the Supreme Court, a petitioner must not only file an amendment within one year of the Supreme Court's decision, but the new right must have been "made retroactive to cases on collateral review."  Dodd, 545 U.S. at 359. However, the Third Circuit has expressly held that "Alleyne cannot be applied retroactively to cases on collateral review."  United States v. Winkelman, – F.3d ----, 2014 WL 1228194, at *2 (3d Cir. 2014).  Thus, the Court finds that Petitioner cannot rely on Alleyne as "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court" to circumvent the AEDPA's one-year statutory period.  See Dodd, 545 U.S. at 350.  Accordingly, the Court finds that Petitioner's second (Doc. No. 2089) and third (Doc. No. 2139) supplemental filings are time-barred.

## IV.     CERTIFICATE OF APPEALABILITY

In proceedings brought under 28 U.S.C. § 2255, an applicant cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued.  Under Section 2253(c)(2), a court may not issue a COA unless "the applicant has made a substantial showing of the denial of

a constitutional right." In other words, a COA should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists would not disagree with the Court's assessment of Petitioner's claims. Accordingly, a COA will not issue in this case.

## V.       CONCLUSION

The Court concludes that Petitioner has failed to state any timely claims in his Section 2255 petition and supplemental filings that merit relief. Additionally, the Court finds that with the exception of his claim for ineffective assistance of counsel for faulty advice, the claims set forth in Petitioner's supplemental filings are time-barred by the AEDPA. Further, because the record in this matter conclusively demonstrates that Petitioner is not entitled to relief, the Court will not conduct an evidentiary hearing. An order consistent with this memorandum follows.